# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRADLEY HUTCHCROFT,<br><br>    Plaintiff,<br><br>vs.<br><br>CHARLES PALMER, CORY TURNER, SHANNON SANDERS, BRAD WITTROCK, CLINT FREDERIKSEN, MIKE MCDONALD, TAHL STIEG and THE STATE OF IOWA<br><br>    Defendants. | No. C16-4095-LTS<br><br>**INITIAL REVIEW ORDER** |

This matter is before me on plaintiff Bradley Hutchcroft's application to proceed *in forma pauperis*, *pro se* 42 U.S.C. § 1983 complaint and *pro se* motion to appoint counsel. Doc. Nos. 1, 1-1, and 2. Also before me are Hutchcroft's supplemental motion to proceed *in forma pauperis* (Doc. No. 4), supplemental complaint (Doc. No. 4-1) and renewed motion to appoint counsel (Doc. No. 5). Hutchcroft is a civil detainee at the Civil Commitment Unit for Sexual Offenders (CCUSO) located in Cherokee, Iowa.

## I.  *IN FORMA PAUPERIS* STANDARD

The filing fee for a 42 U.S.C. § 1983 petition is $350. 28 U.S.C. § 1914(a). The doctrine of *in forma pauperis* allows a plaintiff to proceed without incurring filing fees or other court costs. 28 U.S.C. § 1915(a)(1). Accordingly, plaintiffs who apply for and receive *in forma pauperis* status may file their cases for free. However, under the Prison Litigation Reform Act (PLRA), prisoners must meet certain requirements in order to have their filing fee waived. 28 U.S.C. 1915(a)-(b). A prisoner is defined as "any

person incarcerated or detained in any facility" for "violations of criminal law . . . ." 28 U.S.C. § 1915(h). Under the statute, prisoners are required to pay filing fees over time and are not entitled to proceed *in forma pauperis* as to filing fees. *Id.*

CCUSO is not a prison facility. Instead, it "provides a secure, long-term, and highly-structured setting to treat sexually violent predators who have served their prison terms, but who, in a separate civil trial, have been found likely to commit further violent sexual offenses."[1] Thus, the Iowa Code specifies that the persons confined at CCUSO are not prisoners, but civilly-committed patients who suffer from a "mental abnormality." Iowa Code ch. 229A (generally); Iowa Code § 229A.2(11). Numerous courts have considered the question of whether a patient committed to a state hospital is a prisoner under 28 U.S.C. § 1915. The Eighth Circuit Court of Appeals held that civilly-committed individuals are not prisoners and, therefore, are not subject to 28 U.S.C. § 1915(a)-(b). *Kolocotronis v. Morgan*, 247 F.3d 726, 728 (8th Cir. 2001). Other courts have reached the same conclusion. *See Michau v. Charleston County, S.C.*, 434 F.3d 725 (4th Cir. 2006), *cert. denied*, *Michau v. Charleston County, S.C.*, 126 S. Ct. 2936 (2006), stating:

> However, [plaintiff] is presently being detained under the SVPA, which creates a system of civil, not criminal, detention. … *see also Kansas v. Hendricks*, 521 U.S. 346, 365-69 (1997) (concluding that Kansas's Sexually Violent Predators Act established civil rather than criminal detention scheme). Because [plaintiff's] detention under the SVPA is not the result of a violation of criminal law, or of the terms of parole, probation, or a pretrial diversionary program, he does not meet the PLRA's definition of [a prisoner]. *See … Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (concluding that a person detained under state's civil sexually violent predator act is not a prisoner within meaning of PLRA). Accordingly, the PLRA provides no basis for the dismissal of [plaintiff's] complaints.

*Id.* at 727-28 (some internal citations omitted.); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) ("We agree with *Page, Kolocotronis*, and the other opinions that have

---

[1] *Civil Commitment Unit for Sexual Offenders*, Iowa Department of Human Resources, http://dhs.iowa.gov/mhds/mental/in-patient/ccuso (January 9, 2017).

held the PLRA's straightforward definition of "prisoner" to apply only to persons incarcerated as punishment for a criminal conviction."); *Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009) ("Accordingly, we hold that the fee payment provisions of § 1915 applicable to a 'prisoner,' as defined by § 1915(h), do not apply to those civilly committed under the KSVPA."). Based on those cases, the prisoner pay schedule contained in the PLRA is not applicable to the plaintiff's case. If a civilly-committed plaintiff is entitled to *in forma pauperis* status, that plaintiff may proceed without the payment of fees.

To qualify for *in forma pauperis* status, a plaintiff must provide an affidavit with the following statements: (1) statement of the nature of the action, (2) statement that plaintiff is entitled to redress, (3) statement of the assets plaintiff possesses, and (4) statement that plaintiff is unable to pay filing fees and court costs or give security therefor. 28 U.S.C. § 1915(a)(1).[2]

After considering Hutchcroft's original motion to proceed *in forma pauperis* (Doc. No. 1), I entered an order finding that his motion failed to comply with the above stated rules. *See* Doc. No. 3. I further found that Hutchcroft's proposed complaint failed to state a particular, actionable, claim. *Id*. Accordingly, I directed Hutchcroft to file an amended motion that complied with the rules. *Id*. Hutchcroft has now done so. Specifically, Hutchcroft's supplemental *pro se* motion (Doc. No. 4) to proceed *in forma pauperis* complies with all the applicable rules. It includes a statement of his assets, is notarized, and clearly shows that Hutchcroft lacks the financial resources to pay the filing fees required for this type of case. Accordingly, his motions to proceed *in forma pauperis* (Doc. Nos. 1, 4) are granted and I will direct the clerk of court to file his amended complaint (Doc. No. 4-1). No filing fee will be assessed. However, once any portion of a filing fee is waived, I must dismiss the case if the allegations of poverty prove untrue

---

[2] An affidavit is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Affidavit, Black's Law Dictionary (9th ed. 2009).

3

or the action in question turns out to be frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

## II. HUTCROFT'S CLAIMS

### A. 42 U.S.C. § 1983 INITIAL REVIEW STANDARD

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Pro se* complaints, no matter how "inartfully pleaded are held to less stringent standards than formal pleadings as drafted by a lawyer." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal citations omitted). Although it is a long-standing maxim that a complaint's factual allegations are to be accepted as true at the early stages of a proceeding, this does not require that a court must entertain any complaint no matter how implausible. The facts pled "must [still] be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the claim to relief must be "plausible on its face." *Id.* at 570.

A claim is plausible if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint does "not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 679 (citing Fed. Rule

4

Civ. Proc. 8(a)(2)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. Thus, to survive initial review, the plaintiff must allege a plausible, non-frivolous, claim.

B.  *Analysis*

In his amended complaint, Hutchcroft makes several broad claims. First, he asserts that "[p]laintiff has been denied his right to due process based upon a removal from Transitional Release Program without being provided a proper hearing he would be allowed to present facts which were contrary to the allegations presented by the Administration." Doc. No. 4-1 at 12. Next, Hutchcroft alleges that he has "been denied his right to be free from illegal search and seizure." *Id*. at 13. He then asserts that he has been denied "his right to be free from intrusion by the respondents into his legal communication." *Id*. He vaguely alleges retaliation and that his property rights have been denied. *Id*. at 12-14. Finally, Hutchcroft makes various contentions that his right to counsel has been infringed.

The amended complaint then sets forth various factual allegations concerning these claims. *See* Doc. No. 4-1 at 19-28. Hutchcroft alleges that his cell phone was confiscated and searched by the defendants, contending that they asked Hutchcroft about contacts in his phone and then deleted various text messages recorded on the phone. Hutchcroft further alleges that CCUSO staff improperly communicated with contacts listed in his cellphone and inquired about their relationship to Hutchcroft. Hutchcroft concedes that he consented to having CCUSO employees contact the individuals listed in his phone, but contends the CCUSO employees exceeded the scope of his consent. Hutchcroft then describes numerous instances of alleged misconduct by defendant Fredrickson. Hutchcroft alleges that Fredrickson's misconduct and malfeasance resulted in Hutchcroft being removed from the transitional release treatment level at CCUSO. Hutchcroft also alleges that Fredrickson improperly made Hutchcroft pay for Hutchcroft's own GPS monitoring. Hutchcroft further alleges that CCUSO has recorded his meetings with his

attorney and that he is forced to follow the CCUSO mail policy regarding legal mail. Finally, Hutchcroft alleges that he is only allowed to work on his legal case during certain time periods. I will consider each of Hutchcroft's claims in turn.

### 1.     *Transitional Release Hearing*

Hutchcroft contends that his due process rights have been infringed by being removed from transitional release without a hearing. However, Hutchcroft's petition is confusing on this point. In some places he seems to indicate that the hearing he received was not fair, while in other places he states he did not have a hearing. Under Iowa law, the decision to move a CCUSO patient to transitional release is generally reserved for the Iowa state courts. Iowa Code § 229A.8A. Even construing Hutchcroft's petition broadly, I find he has failed to allege that he was denied the annual court hearing required by the Iowa Code. *See* Iowa Code § 229A.8. At most, Hutchcroft has alleged that CCUSO used certain evidence against him in the proceedings during which his transitional release was revoked and that he was not given an opportunity to challenge that evidence. This court has rejected the same argument when presented by another CCUSO patient, stating:

> the use of behavioral reports in considering whether a patient should progress through the treatment phases towards transitional release does not rise to the type of liberty interest protected by and requiring a [*Wolff v. McDonnell*, 418 U.S. 539 (1974)] style hearing. . . Accordingly, Mr. Taft has failed to articulate a valid liberty interest that he is being denied by CCUSO's behavior report system. Because Mr. Taft has failed to articulate a valid constitutional claim, and there are no disputed factual issues, the Defendants are entitled to Judgment as a matter of law and their Motion for Summary Judgment must be granted.

*Taft v. Ryan*, No. 11-CV-4021-DEO, 2014 WL 1338113, at *5-8 (N.D. Iowa Mar. 28, 2014). I agree. Accordingly, Hutchcroft has failed to state a claim upon which relief can be granted. That portion of his *pro se* amended complaint must be dismissed.

### 2. Cell Phone Confiscation

Hutchcroft alleges that CCUSO confiscated his cell phone and searched it. However, Hutchcroft has failed to allege why or how CCUSO's search of his cell phone constitutes a constitutional violation. In another case, I recently found that CCUSO has an interest in monitoring patients' phone access to prohibit counter-therapeutic contacts:

> CCUSO has an interest in the safety of patients and the public as well as an interest in maintaining a therapeutic treatment environment for patients. Safety and a therapeutic treatment environment are legitimate interests. *See Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993). The Eighth Circuit has approved as rational both (a) a phone policy that does not allow incoming calls and (b) a policy that restricts calls to a preapproved list of three people. *See Beaulieu*, 690 F.3d at 1037-41; *Benzel v. Grammer*, 869 F.2d 1105, 1108-09 (8th Cir. 1989). Restricting phone calls to individuals on a preapproved list is a rational way to maintain security and a therapeutic environment.

*Williams v. Benson*, No. C15-4035-LTS, 2016 WL 3636035, at *9 (N.D. Iowa 2016). CCUSO is a secure facility and the CCUSO patients have been committed to the custody of the state. Accordingly, CCUSO can generally search and secure the facility and examine potentially counter-therapeutic materials. *See Altman v. Palmer*, No. C13-4066-DEO, 2015 WL 1383824, at *9 (N.D. Iowa 2015) (discussing the confiscation of a counter-therapeutic movie); *see also Taft et al., v. Loescher*, C12-4079, Doc. No. 5 (N.D. Iowa 2012) (dismissing claim where CCUSO patient complained regarding the confiscation of counter-therapeutic mail). In light of my previous ruling in *Williams* regarding CCUSO's ability to monitor phone use, and even after giving Hutchcroft's claim the great deference owed to a complaint at this early stage of a case, I find that he has failed to state a claim for which relief can be granted. Accordingly, that portion of Hutchcroft's complaint is dismissed.[3]

---

[3] I also dismiss Hutchcroft's claim based on allegations that the defendants communicated with individuals listed in his phone. First, Hutchcroft has failed to couch that claim in terms of a protected constitutional right. Second, as I held in *Williams*, there is a presumption that CCUSO can monitor those with whom its patients communicate:

7

### *3. Retaliation*

To show retaliation, a plaintiff must show (a) that he exercised a constitutionally protected right; (b) that he was disciplined; and (c) exercising that right was the motivation for the discipline. *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009). Hutchcroft has alleged that defendant Fredrickson has treated him poorly. However, Hutchcroft has not alleged that Fredrickson's treatment was in response to Hutchcroft's exercise of a clearly established constitutional right. Accordingly, he has failed to state a claim for retaliation and his complaint related to this issue must be denied.

### *4. Mail and Legal Communications*

In *Williams*, I discussed access to mail at the CCUSO facility. To the extent Hutchcroft raises claims covered by the previous settlement agreement between CCUSO patients and CCUSO defendants, those claims are barred. *See Williams*, 2016 WL 3636035, at *8. Hutchcroft also alleges that CCUSO has restricted his access to legal materials to certain time periods – specifically that he was not allowed to fax and email at certain times. Hutchcroft has failed to allege how this alleged restriction violates a protected constitutional right. Accordingly, that claim will be denied.

---

> Inherent in the notion of civil commitment is the assumption that the patients are cut-off from some contact with the outside world. Civil commitment, segregating these patients from the rest of society, is constitutional as a general principal. *See Kansas v. Hendricks*, 521 U.S. 346 (1997). As discussed above, it is entirely appropriate for CCUSO to maintain an approved contact list for each patient and to vet proposed new contacts before allowing telephone calls to occur. It was not unreasonable for CCUSO to require information about [a potential contact] as a condition of approving her. This incident did not amount to a deprivation of Williams' constitutional rights.

*Williams*, 2016 WL 3636035, at *10.

8

However, Hutchcroft also alleges his attorney meetings at CCUSO have been monitored and recording by the defendants. This raises a more complex question. In the context of a prisoner claim one court summarized the uncertain state of the law:

> The legality of monitoring inmate calls to an attorney is not settled. It has been held that the presence of a custodial officer when prisoners place or receive a phone call is constitutionally objectionable. *See Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976). It has also been held that prison officials may tape a prisoner's telephone conversations with an attorney if such taping does not substantially affect the prisoner's right to confer with counsel. *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991). It is settled that prisoners do not forfeit their constitutional guarantee under the Fourteenth Amendment to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). Access to counsel is not only a right under the Sixth Amendment, but is one means of insuring access to the courts. *Mann*, 828 F.Supp. at 902. However, the Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel. *See Mann*, 46 F.3d at 1060; *see also McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). The choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts. *Ishaaq v. Compton*, 900 F.Supp. 935, 941 (W.D.Tenn.1995).

*Arney v. Simmons*, 26 F. Supp. 2d 1288, 1296 (D. Kan. 1998); *see also Moran v. Burbine*, 475 U.S. 412, 468, (1986) (Stevens, J. dissenting) (noting that monitoring of phone calls between prisoners and their attorneys violates fundamental fairness).

At this stage of the case, I must accept Hutchcroft's allegations as true. Taken as true, Hutchcroft's allegations concerning the monitoring and recording of his meetings with his attorney may, if true, amount to a violation of his due process rights, his right to be free from unreasonable searches or his right to freely communicate with counsel. Hutchcroft's allegations contain both a question of fact and question of law that cannot be summarily decided. Accordingly, I must allow this claim to proceed.[4]

---

[4] Although, there is no credibility determination to be made at this early stage of the case, I do note that CCUSO's use of video monitoring has previously run afoul of constitutional protections. *Arnzen v. Palmer*, 713 F.3d 369, 375 (8th Cir. 2013). Additionally, because of

Similarly, Hutchcroft alleges that the legal communications he sends via fax and email are reviewed by the defendants. I have previously found that interference with a patients' legal papers *may* amount to a constitutional violation in certain situations. *Mead v. Palmer*, No. C15-4055-LTS, 2016 WL 4775456, at *5 (N.D. Iowa 2016). Without further discovery, it is unclear whether such activities fall under the terms of the CCUSO handbook and/or the previous settlement or, instead, could amount to a constitutional violation. Accordingly, those claims cannot be summarily dismissed.

### 5. *Payment for GPS Monitoring Services*

Hutchcroft also alleges that the defendants have forced him to pay for his own GPS monitoring. As a general rule, prisons are allowed to charge inmates for costs associated with incarceration. *See Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012), stating that, "[t]he Constitution does not prohibit charging prisoners for essential prison services, at least in the absence of a showing that the result is a severe deprivation of a fundamental right." As noted above, however, those detained at CCUSO are patients, not prisoners. To my knowledge, the Eighth Circuit has not ruled on whether a civil commitment program can charge detainees for services. However, in other contexts the court has equated civil detainees' rights to prisoners' rights. *See, e.g.*, *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (holding that civil detainees' claims for deficient medical care will be considered under the deliberate indifference standard used for prisoners). Accordingly, to prevail on a claim that CCUSO impermissibly charges him for GPS services, Hutchcroft would likely have to claim that those charges violate a

---

the nature of Iowa's civil commitment statutory scheme, CCUSO patients have an ongoing and continuous need to communicate with appointed counsel to prepare for their mandatory annual state court proceedings.

fundamental right.[5] He has failed to make such a claim.[6] Without citing a case that supports his position, or at least alleging that the defendants have violated his fundamental rights, Hutchcroft fails to state a claim upon which relief could be granted. Accordingly, I must dismiss this claim.

### 6. *Defendant State of Iowa*

Hutchcroft named the State of Iowa as a defendant in his amended complaint. 42 U.S.C. § 1983 specifically provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. In *Will v. Michigan Dept. of State Police*, the Supreme Court ruled "that a State is not a person within the meaning of § 1983." 491 U.S. 58, 63 (1989). Therefore, Hutchcroft's amended complaint cannot proceed against the State of Iowa.

## C. *Motion to Appoint Counsel*

Hutchcroft requests the appointment of counsel. Doc. Nos. 2, 5. The appointment of counsel for a person unable to afford counsel in a civil action is within my discretion. *See* 28 U.S.C. §1915(e)(1). I will reserve ruling on these motions until after the defendants have filed their answer and any dispositive motions.

---

[5] Some charges are specifically contemplated by statute: "Reimbursement may be obtained by the director from the patient and any person legally liable or bound by contract for the support of the patient for the cost of confinement or of care and treatment provided." Iowa Code § 229A.12.

[6] This is not to say that location monitoring cannot possibly affect a fundamental right. *See, e.g.*, Eric M. Dante, *Tracking the Constitution - The Proliferation and Legality of Sex-Offender GPS-Tracking Statutes*, 42 Seton Hall L. Rev. 1169 (2012). However, Hutchcroft has failed to make such a claim.

## III. CONCLUSION

For the reasons set forth herein:

1. Hutchcroft's motions to proceed *in forma pauperis* (Doc. Nos. 1 and 4) are **granted**. The Clerk is directed to file his amended complaint (Doc. No. 4-1) without the prepayment of fees.

2. Based on my initial review, almost all Hutchcroft's claims fail as matter of law. Specifically, his claims based on retaliation, payment for GPS monitoring services, CCUSO's mail policy, the confiscation of his cell phone, and the transitional release hearing are **denied** and **dismissed**. Additionally, the State of Iowa is **dismissed** as a defendant in this case.

3. However, Hutchcroft's claims based on access to counsel and legal communications are sufficient to survive the initial review stage and, therefore, will proceed.

4. **Ruling is reserved** on Hutchcroft's motions (Doc. Nos. 2, 5) to appoint counsel. Those motions will be addressed after the defendants respond to Hutchcroft's surviving claims and file dispositive motions.

5. The Clerk is directed to facilitate service of this order and the amended complaint on the named defendants.

**IT IS SO ORDERED.**

**DATED** this 29th day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE

NOTICE OF LAWSUIT,
and REQUEST FOR WAIVER OF SERVICE OF SUMMONS

TO THE NAMED DEFENDANTS IN THE FOLLOWING CAPTIONED ACTION:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

BRADLEY HUTCHCROFT,

    Plaintiff,

vs.

CHARLES PALMER, et al.,

    Defendants.

No. C16-4095-LTS

    A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint and a copy of the corresponding order from this Court are attached. This complaint has been filed in the United States District Court for the Northern District of Iowa.

    Pursuant to Rule 4 of the Federal Rules of Civil Procedure, you have an obligation to cooperate in saving unnecessary costs of service of summons and complaint. Please sign the enclosed document where appropriate acknowledging receipt of the complaint and notice of this pending lawsuit and waiving formal service of summons. After signing the enclosed document, please return it to the United States Clerk's Office in the envelope provided within thirty (30) days of this date: __March 29, 2017__.

    I affirm that this notice and request for waiver of service of summons is being sent to you on behalf of the plaintiff, this __March 29_____, 2017.

                                            /s/ djs, Deputy Clerk
                                            Signature (Clerk's Office Official)
                                            Northern District of Iowa

ACKNOWLEDGMENT OF RECEIPT OF
NOTICE OF LAWSUIT,
and WAIVER OF SERVICE OF SUMMONS

(**Return **this** document within thirty days after \_\_\_March 29, 2017\_\_\_, to the United States Clerk's Office in the envelope provided.)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

BRADLEY HUTCHCROFT,

    Plaintiff,

vs.

CHARLES PALMER, et al.,

    Defendants.

No. C16-4095-LTS

I acknowledge receipt of the complaint and notice of the lawsuit in which I (or the entity on whose behalf I am addressed) have been named a defendant. I have received and/or read the complaint accompanying this document.

I agree to save the cost of service of a summons and an additional copy of the complaint by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4 of the Federal Rules of Civil Procedure. I hereby waive service of summons.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the Court except for objections based on a defect in the service of summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer or motion under Rule 12 of the Federal Rules of Civil Procedure is not served within 60 days after \_\_\_March 29, 2017\_\_\_, (the date Notice, Waiver and corresponding documents were sent).

Date _____ Signature _____

                                   Printed name _____

As _____ of _____
          (Title)                    (Entity)

Date _____ Signature _____

Printed name _____

As _____ of _____
          (Title)                    (Entity)

Date _____ Signature _____

Printed name _____

As _____ of _____
          (Title)                    (Entity)

Date _____ Signature _____

Printed name _____

As _____ of _____
          (Title)                    (Entity)

Date _____ Signature _____

Printed name _____

As _____ of _____
          (Title)                    (Entity)

Date _____ Signature _____

Printed name _____

As _____ of _____
         (Title)         (Entity)

Date _____   Signature _____

Printed name _____

As _____ of _____
         (Title)         (Entity)

<u>**Address Form**</u>

Case Number: 16-CV-4095-LTS          Date: <u>March 29, 2017</u>

To:   Clerk of Court
RE:   Service on Named Defendants
ALL DEFENDANTS
% Civil Commitment Unit for Sexual Offenders
1251 West Cedar Loop
Cherokee, IA 51012

Gretchen Witte Kraemer
Department of Justice
Regent and Human Services Division
Hoover Building
Des Moines, IA 50319-0109

Below, please find the known (or likely) addresses for the following persons/entities who have been named as defendants to this action:
Charles Palmer, Director Iowa Department of Human Service
Cory Turner, Administrator of CCUSO Unit/Cherokee
Shnanon Sanders, Clinical Director of CCUSO
Brad Wittrock, Director of Security Operations
Clint Frederiksen, Psychiologist II
Mike McDonald, Treatment Provider Spec
Tahl Stieg, Psych Security Spec